**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEREMIAH CAIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-cv-14282 |
| | ) | |
| ANTHONY WOJCIK, et al. | ) | Hon. Martha M. Pacold |
| Defendants. | ) | |

**ASA NAZARIAN AND COOK COUNTY'S**
**MEMORANDUM OF LAW IN SUPPORT OF DISMISSAL**

## **TABLE OF CONTENTS**

Table of Authorities ..................................................................................................iii-iv

Introduction............................................................................................................1

Legal Standard ......................................................................................................2

The Garica Murer...................................................................................................3

I. Plaintiff's allegations regarding the investigation ...............................................4

A. Plaintiff's allegations regarding Juan Parra's statement ...................................4

B. Plaintiff's allegations regarding ASA Nazarian's role in taking Plaintiff's statement ..............6

C. Plaintiff's allegations regarding probable cause ...............................................8

D. Plaintiff's allegations regarding identification procedures ...............................9

II. ASA Nazarian is entitled to absolute prosecutorial immunity .................................10

III. Alternatively, Count VII should be dismissed because probable cause existed to charge Plaintiff with felony offenses under Illinois Law ...................................................14

IV. Alternatively, Count XI should be dismissed because Illinois Law confers no separate cause of action for willful and wanton conduct......................................................15

V. Cook County is not liable under any derivative theory of liability because ASA Nazarian is not liable.............................................................................................16

Conclusion .........................................................................................................16

## TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|
| *Andrews v. Burge*, 660 F. Supp. 2d 868 (N.D. Ill. 2009). | 13 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 3 |
| *Atkins v. Hasan,* 2015 WL 3862724, 2 (N.D. Ill. 2015) | 4 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) | 3 |
| *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) | 3 |
| *Bradshaw v. DeGand*, 1992 U.S. Dist. LEXIS 911 (N.D. Ill. January 30, 1992) | 11 |
| *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993). | 11, 12, 13 |
| *Curtis v. Bembenek*, 48 F.3d 281 (7th Cir.1995) | 14 |
| *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) | 11 |
| *Fletcher v. Bogucki* No. 20-CV-04768, 2021 WL 4477968 (N.D. Ill. Sept. 30, 2021) | 15 |
| *Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir. 2012)* | 3, 5 |
| *Gen. Elec. Cap. Corp. v. Lease Resol. Corp*., 128 F.3d 1074 (7th Cir. 1997) | 1,2 |
| *Gibson v. City of Chi.,* 910 F.2d 1510 (7th Cir. 1990) | 2 |
| *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir.1983) | 6 |
| *Harris v. City of Chicago*, No. 14 C 4391, 2015 WL 1331101 (N.D. Ill. Mar. 19, 2015) | 12 |
| *Hennessy v. Penril Datacomm Networks, Inc*., 69 F.3d 1344 (7th Cir.1995) | 1 |
| *Hickey v. O'Bannon*, 287 F.3d 656 (7th Cir. 2002) | 2, 14 |
| *Hill v. Coppleson*, 627 F.3d 601 (7th Cir. 2010) | 12, 13 |
| *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007) | 14 |
| *Hyung Seok Koh v. Graf*, 2013 U.S. Dist. LEXIS 136341 (N.D. Ill. 2013). | 3 |
| *Imbler v. Pachtman*, 424 U.S. 409 (1976) | 10, 11,12, 13 |
| *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479 (2012) | 15 |
| *Kitchen v Burge*, 781 F.Supp. 2d 721 (2011) | 13 |
| *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215 (2010) | 15 |
| *Mitchell v. Forsyth*, 472 U.S. 511 (1985) | 11 |
| *Mustafa v. City of Chicago*, 442 F.3d 544 (7th Cir. 2006) | 15 |
| *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449 (7th Cir. 1998) | 3 |
| *Papasan v. Allain*, 478 U.S. 265 (1986) | 2, 14 |
| *Perkins v. Silverstein*, 939 F.2d 463 (7th Cir. 1991) | 2 |
| *Potts v. City of Lafayette*, 121 F.3d 1106, (7th Cir.1997). | 15 |
| *Smith v. Burge*, 222 F.Supp.3d 669 (N.D. Ill. 2016) | 11 |
| *Smith v. Power*, 346 F.3d 740 (7th Cir. 2003) | 10 |
| *Sneed v. Rybicki*, 146 F.3d 478 (7th Cir. 1998) | 14 |
| *Stump v. Sparkman*, 435 U.S. 349 (1978) | 11 |
| *Venture Assocs. Corp. v. Zenith Data Sys. Corp*, 987 F.2d 429(7th Cir. 1993) | 3 |
| *White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006) | 12 |
| *Wrice v. Burge*, 187 F. Supp. 3d 939 (N.D. Ill. 2015) | 12 |
| *Wright v. Associated Ins. Cos.,* 29 F.3d 1244 (7th Cir.1994) | 5 |

| *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730 (7th Cir. 2002) | 5 |

| **Statutes** | **Page(s)** |
| --- | --- |
| 55 ILCS 5/3-9005 | 4 |
| 720 ILCS 5/24-1.1 | 9, 12, 14 |
| 745 ILCS 10/2-109 | |

NOW COMES Defendants, former Assistant State's Attorney NANCY NAZARIAN ("Nazarian"), by and through her attorneys, Tribler Orpett & Meyer, P.C., and COOK COUNTY, by and through its attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistant Kelli Huntsman, and submit this memorandum of law in support of their motion to dismiss Plaintiff's Complaint pursuant to Fed Rule Civ. Pro. 12(b)(6). In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff's Complaint stems from his arrest and conviction for the murder of Jose Garcia and aggravated battery of Julio Lugo ("the Garcia Murder") in 1999. Dkt #1, ¶1. Plaintiff, along with Eruby Abrego, Juan Parra, and Nicasio Santiago were originally charged in the Circuit Court of Cook County with murder and attempt murder, and other related charges under case numbers 99CR093901-04. Juan Parra was found not guilty at a bench trial before Judge Wadas on or about January 22, 2001. See *People of the State of* Illinois *v. Juan Parra* 99CR093904.[1] Plaintiff was found guilty at a joint bench trial before Judge Wadas on or about August 28, 2001. See *People of the State of Illinois v. Jeremiah Cain* 99CR093903. Nicasio Santiago was found not guilty at a joint bench trial before Judge Wadas on or about August 28, 2001. See *People of the State of Illinois v. Nicasio Santiago* 99CR093901. Eruby Abrego was found guilty at a jury trial before Judge Wadas on or about September 22, 2004. See *People of the State of Illinois v Eruby Abrego* 99CR093902.

---

[1] "A court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081–82 (7th Cir. 1997)(citing Fed.R.Evid. 201(b); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir.1995).

After extensive post-conviction proceedings, the Cook County State's Attorney's Office ("CCSAO") elected to not oppose Plaintiff's successive petition for post-conviction relief and the Honorable Judge Carol Howard vacated Plaintiff's conviction. *See* July 20, 2022, Court Order attached as Exhibit A. *See also* Dkt #1, ¶ 70, 130.[2] Thereafter, the CCSAO n*olle prosequi* the charges against Plaintiff. *Id.*

Nazarian was an Assistant State's Attorney with the Cook County State's Attorney's Office. *Id.* at ¶ 24. Plaintiff's Complaint alleges the following causes of action against Nazarian: Count III:42 U.S.C. §1983-Coerced and False Confession, Count VII: State Law Claim-Malicious Prosecution, Count X: State Law Claim-Intentional Infliction of Emotional Distress, Count XI: State Law Claim-Willful and Wanton Conduct. Plaintiff alleges no causes of action against Cook County. The only allegation directed towards Cook County identifies it as Nazarian's employer and alleges that Cook County is a necessary party. *Id.* at ¶ 24.

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts accept as true the well-pled facts of a complaint and draw all reasonable inferences in favor of the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). A court is not required, however, to accept as true a legal conclusion couched as a factual allegation or unsupported conclusions of fact. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, and not its merits. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). In order to withstand a motion to dismiss, Plaintiffs' Complaint must describe the claim in sufficient detail to give the

---

[2] Court Orders from the underlying criminal case are not subject to reasonable dispute and it is proper for the Court to take judicial notice without converting this motion to a Rule 56 motion for summary judgment. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp*., 128 F.3d at 1081–82.

Defendants fair notice of the claim and the grounds upon which the claim is based. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the Complaint merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it fails to satisfy the pleading requirements and dismissal is appropriate. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Additionally, the Complaint must plausibly suggest Plaintiffs' right to relief beyond a speculative level. *See Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Twombly*, 550 U.S. at 555.

Traditionally, courts refer to only what is contained in the pleadings when evaluating motions to dismiss and may treat the motion as one for summary judgment if matters outside the pleadings are presented. Fed. R. Civ. P. 12(d). The pleadings include the complaint, the answer, and any written instruments attached as exhibits. Fed. R. Civ. P. 10(c); *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); see also *Hyung Seok Koh v. Graf*, 2013 U.S. Dist. LEXIS 136341, at *26 (N.D. Ill. 2013). However, a court may consider extraneous documents for a motion to dismiss—without treating it as a motion for summary judgment—if the extraneous matters are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp*, 987 F.2d 429, 431-42 (7th Cir. 1993); Koh, 2013 U.S. Dist. LEXIS, at *26-27 (internal quotation marks omitted). The Seventh Circuit held in *Geinosky v. City of Chicago* that there are multiple instances where documents "outside the pleadings" can be considered at the 12(b)(6) stage. *Geinosky*, 675 F.3d 743, 745 fn. 1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.")

## THE GARCIA MURDER

On March 22, 1999, victim Julio Lugo was a passenger in his cousin Fred Marrero's car with his younger cousin Ysidro Quinones. Dkt. #1, ¶ 26. While in the car, Lugo observed a Chevy Caprice with four to five people in it throwing gang signs at them. *Id*. at ¶ 27. One of the individuals threw a bottle at Marrero's car. *Id.* Marrero, Lugo, and Quinones drove away to a store at Belmont and Monticello. *Id.* After exiting Marrero's car, Lugo recognized two friends, Ramon Torres and Jose Garcia in another vehicle and stopped to talk to them. *Id.* at ¶ 28. As Lugo was standing on the side of the car, he observed an individual standing about 10 to 15 feet away on Monticello Ave.. *Id.* at ¶ 29. The individual flashed gang signs, shouted gang slogans, before retrieving a gun and shooting at the car Torres and Garcia were seated in. *Id.* Jose Garcia was shot in the head and died on scene. *Id.* at ¶ 30. Julio Lugo shielded his younger cousin and was shot twice. *Id.*

### PLAINTIFF'S ALLEGATIONS REGARDING THE INVESTIGATION

I. **PLAINTIFF'S ALLEGATIONS AGAINST ASA NAZARIAN ARE NOT WELL-PLED AND SHOULD NOT BE GIVEN THE PRESUMPTION OF TRUTH.**

A. **PLAINTIFF'S ALLEGATIONS REGARDING JUAN PARRA'S STATEMENT ARE NOT WELL-PLED AND CONTRARY TO JUAN PARRA'S SWORN TESTIMONY**

Plaintiff's Complaint impermissibly "group pleads" his allegations regarding the arrest, questioning, and statement of Juan Parra. Plaintiff makes several allegations against "Defendants" thereby including ASA Nazarian, without any good faith basis in fact or law. Plaintiff alleges that "Defendants" arrested Juan Parra and held him overnight, despite the fact that ASA Nazarian is a prosecutor, not a peace officer, and has no power to effectuate an arrest under Illinois law. *See* Dkt #1, ¶ 34, 35. *See generally* 55 ILCS 5/3-9005. Therefore, ASA Nazarian could not possibly have been one of such "Defendants" yet Plaintiff does not restrict

4

said allegations to Police Officer Defendants. Moreover, Plaintiff alleges that "Defendants," thereby including Nazarian, took a statement from Parra regarding the Garcia Murder. Dkt. #1, ¶ 35, 36. A simple review of Parra's statement shows that it was taken by ASA Jake Rubinstein, not Nazarian. *See* the Court Reporter Statement of Juan Parra taken by ASA Jake Rubinstein attached as Exhibit B.[3] There is no good faith basis in law or fact to allege ASA Nazarian's involvement in the arrest, questioning, and eventual statement from Parra.

Through this use of "group pleading," Plaintiff's Complaint fails to place ASA Nazarian on notice as to which claims and alleged actions she must defend against and lumps her into allegations without basis in law or fact. "Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief *must* include such particulars." *Atkins v. Hasan,* 2015 WL 3862724, 2 (N.D. Ill. 2015)(emphasis in original). Plaintiff's Complaint lacks these necessary details when making allegations regarding the arrest, questioning, and statement of Juan Parra.

Not only are Plaintiff's allegations impermissibly group pled in violation of Rule 8, but they are contrary to Juan Parra's own sworn trial testimony. Plaintiff alleges that Defendants fabricated Parra's statement, that the statement was false, that it was obtained through coercion, threats, and false promises, and that Defendants concealed the alleged misconduct. Dkt. #1, ¶ 35-37. In Parra's statement, Parra, Abrego, Santiago, and Plaintiff drove into Latin King territory and initiated a confrontation with the Latin Kings. *Id.* at ¶ 36. Plaintiff and Santiago returned to Parra's car, but Abrego did not. *Id.* Parra pulled into an alley and waited. *Id.* Parra heard several

---

[3] Juan Parra statement is summarized in Plaintiff's Complaint and critical to analyzing the allegations thereof. As such, it is proper for the Court to consider it in ruling on Nazarian's 12(b)(6) motion to dismiss without converting it into a Motion for Summary Judgment. *Geinosky v City of Chicago*, 675 F.3d 743, 745 fn. 1 (7th Cir. 2012), *188 LLC v. Trinity Industries, Inc*., 300 F.3d 730, 735 (7th Cir.2002) *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir.1994).

shots and saw Abrego return to the car holding a gun. *Id.* Plaintiff alleges Parra's statement is false. However, these allegations are directly contradicted by Parra's own sworn testimony at Plaintiff's criminal trial. *See* Transcript of Juan Parra's testimony at the joint bench trial of *People of the State of Illinois v. Jeremiah Cain & Nicasio Santiago* 99CR093901-03 attached as Exhibit C.[4]

At trial, Parra testified consistent with his prior statement. He testified that he drove Abrego, Santiago, and Plaintiff drove into Latin King territory. Ex C, p. 150 line 8- p. 153 line 20. The four initiated a confrontation with Latin Kings. *Id.* at p. 155, line 6- p. 156, line 14. Plaintiff and Santiago returned to Parra's car but Abrego did not. *Id.* p. 156, line 14-18. Parra pulled into an alley and waited. *Id.* at p. 156, line 21- p. 157 line 8. Parra heard several shots and saw Abrego return to the car holding "like a gun" in his hand. *Id.* p. 158 line 17-p. 160 line 9, p. 163 line 7-p. 165 line 14. Parra did not testify to any of the misconduct alleged by Plaintiff and has not recanted his statement or trial testimony. As such, Plaintiff's Complaint allegations regarding Juan Parra are not well-pled and it is unknown what good faith basis Plaintiff has in making said allegations.

Plaintiff's allegations Juan Parra regarding are not well-pled because 1) there is no basis to allege ASA Nazarian's involvement in the arrest and questioning of Parra and 2) the allegations themselves are contrary to Parra's own un-recanted testimony. As such, they should not be given the presumption of truth when evaluating this motion.

### B.    PLAINTIFF'S ALLEGATIONS REGARDING ASA NAZARIAN'S ROLE IN THE TAKING OF PLAINTIFF'S STATEMENT ARE NOT WELL-PLED AND CONTRARY TO PLAINTIFF'S OWN SWORN TESTIMONY

---

[4] The Court may take judicial notice of prior trial testimony in related *cases. Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir.1983). The contents of Parra's statement and transcript are not subject to reasonable dispute.

Plaintiff alleges he agreed to give a false statement implicating himself in the Garica murder after he was physically and verbally abused by Defendant Wojcik. Dkt. #1, ¶ 41-45. Plaintiff does not allege ASA Nazarian was present for any of the alleged physical or verbal abuse, or that she knew about said abuse.[5] *Id.*

Plaintiff alleges four specific allegations against ASA Nazarian. First, Plaintiff alleges that he rehearsed the false story with Defendant Wojcik and in the presence of ASA Nazarian. *Id.* at ¶ 46. Plaintiff alleges that Defendant Wojcik promised Plaintiff that he was only being charged with the gun and that he would only be used as a witness in the presence of ASA Nazarian. *Id.* at ¶ 48. Lastly, Plaintiff alleges that Defendant Wojcik added and embellished the false story in the presence of ASA Nazarian and that Nazarian and Wojcik worked together to strengthen Plaintiff's false statement. *Id.* at ¶ 47. these allegations are directly contradicted by Plaintiff's own testimony during post-conviction proceedings. *See* Transcript of Jeremiah Cain's testimony on May 2, 2022, in *People of the State of Illinois v. Jeremiah Cain* 99CR093903 attached as Exhibit D. The pertinent part of Plaintiff's testimony is as follows:

> Q: Let me ask you a different question, sir. Now, you say that Defendant Wojcik had told you what to say in the court reported statement that you gave, at least told you what to say regarding the murder in question; is that correct?
> A: That is correct.
> Q: And you say that he rehearsed this with you before the statement was given?
> A: It was.
> Q: And it was just you and Detective in a room together while the statement was being rehearsed with you, correct?
> A: It was.

Ex. D, p. 137, line 3-15.

> Q: You didn't tell the state's attorney [Nazarian] or the court reporter that you had been threatened or that promises had been made to you, do you remember that?
> A: Yeah, I did not.
> Q: Why didn't you?

---

[5] Nazarian denies participating in or having knowledge of any alleged physical or verbal abuse or any alleged coercive or unconstitutional conduct.

> A:     Because Detective Wojcik was there the whole time, and I was afraid of what
>        would happen if I said anything else.

Ex. D, p. 110, line 8-15

> Q:     After this statement was printed up, did you and the assistant state's attorney
>        Nancy Nazarian and Detective Wojick go over the printout?
> A:     We did, yes, sir.
> Q:     And there were some handwritten additions or corrections that were made to it; is
>        that right?
> A:     Yes, sir.
> Q:     And was the state's attorney herself ever asking you and follow-up questions as
>        the printout was being reviewed?
> A:     Yeah. We kind of went over it line for line, and then Detective Wojick would stop
>        at certain lines and then add a little extra to it and then ask if I would agree to it.
>        And he would say, like, well, you know, it happened like this or this right? And
>        then he'd look at me. And I'm more concerned about going back in the
>        interrogation room, so I am like, yes, sir.

Ex. D, p. 146, line 11- p. 147, line 6.

Plaintiff's own testimony directly contradicts the allegation that ASA Nazarian was present while Plaintiff and Defendant Wojcik allegedly rehearsed the statement. Furthermore, Plaintiff testified that he did not tell ASA Nazarian that he had been threatened or made any promises by Defendant Wojcik, contradicting any allegation that ASA Nazarian knew of any alleged promises made to Plaintiff. As discussed above, Plaintiff does not allege ASA Nazarian was present for any of the alleged physical or verbal abuse or that she had knowledge thereof. Lastly, Plaintiff testified that he agreed to all the handwritten corrections or additions to his court-reported statement. ASA Nazarian does not contest that she reviewed the entire statement with Plaintiff and allowed him to make corrections but denies any knowledge the statement was false as alleged.

   C.     **PLAINTIFF'S ALLEGATION THAT DEFENDANTS LACKED
          PROBABLE CAUSE TO CHARGE PLAINTIFF WITH A CRIME
          PLAINLY FALSE**

8

Throughout Plaintiff's Complaint, he alleges Defendants acted without probable cause to suspect Plaintiff committed any crime. Dkt. #1, ¶134, 135, 144, 145, & 185. Plaintiff's Complaint acknowledges that Defendant Officers located a firearm allegedly used in the Garcia Murder in Plaintiff's bedroom. Dkt. #1, ¶ 39, 40. Plaintiff alleges he took possession of the gun from his criminal co-defendant and fellow OA street gang member Nicasio Santiago but apparently denies any involvement or knowledge of the murder itself. Plaintiff neglects to mention that on the date he was found to be in possession of said gun, he was a convicted felon. *See* Certified Statement of Conviction for *People of the State of Illinois vs Jeremiah Cain* 97C11510801 attached as Exhibit E.[6]

It has long been a felony offense under Illinois law for felons to knowingly possess a firearm on or about his person or in his abode. See 720 ILCS 5/24-1.1 (2000). Whether or not Plaintiff knew the firearm was used in the Garcia murder is irrelevant as to the question of whether probable cause existed to charge him for possession of the weapon itself. At points, Plaintiff's Complaint acknowledges there was probable cause to charge Plaintiff with weapons offenses related to the possession of a firearm i.e. "Defendant Wojcik reassured Plaintiff that he was only being charged with a gun." Dkt. #1, ¶ 44, 48. As such, any allegation that Defendants acted without any probable cause is not well-pled and not entitled to the presumption of truth when evaluating this motion.

While Plaintiff clearly disputes whether probable cause exists based on Juan Parra and Plaintiff's statements, he can not dispute that probable cause existed to charge him with unlawful possession of a weapon by a felon under 720 ILCS 5/24-1.1 (2000).

---

[6] Plaintiff's prior felony conviction and the attached Certified Copy of Conviction from the Cook County Clerk of Court is not subject to reasonable dispute and it is proper for the Court to take judicial notice of said conviction. *Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d at 1081–82.

### D.    PLAINTIFF'S ALLEGATIONS REGARDING ALLEGED SUGGESTIVE IDENTIFICATION PROCEDURES ARE NOT RELEVANT TO ANY CLAIM AGAINST NAZARIAN

Plaintiff alleges Defendant Guevara engaged in suggestive identification procedures to obtain false identifications of Eruby Abrego by Julio Lugo, Ramon Torres, and Isidro Quinones. *Id.* at ¶53-59. However, Lugo, Torres, and Quinones never identified Plaintiff in any line-up or photo array. *Id.* As such, it is unclear how the allegedly suggestive lineups in any way brought about Plaintiff's conviction. Nevertheless, Plaintiff does not allege ASA Nazarian was involved in the allegedly suggestive identification procedures.

## ARGUMENT

## II.    ASA NAZARIAN IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY.

It is well settled that prosecutors are absolutely immune from suits for damages relating to their initiation and presentation of the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). "[A]bsolute immunity shields prosecutors even if they act maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). The policy served is "concern that harassment by unfounded litigation" could "cause a deflection of the prosecutor's energies from his public duties" and lead him to shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. The *Imbler* court held that whether or not an action falls within the scope of his prosecutorial duties is determined by its function. *Id.* The *Imbler* court recognized that "the duties of a prosecutor in his role as advocate for the State involves actions preliminary to the initiation of a prosecution," and "decisions on a wide variety of sensitive issues" including "questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute . . ." *Id.* at 431 n.33. Furthermore, "[p]reparation,

10

both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Id*. The Court observed in *Imbler* that an out-of-court "effort to control the presentation of [a] witness' "testimony" is entitled to absolute immunity. *Id*. at 430 n.32.

For purposes of absolute immunity, it is irrelevant whether the protected party acted negligently, with malice, or in bad faith. *Bradshaw v. DeGand*, 1992 U.S. Dist. LEXIS 911, *4 (N.D. Ill. January 30, 1992 (Conlon, J.) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (absolute immunity for the judiciary precludes civil actions, even when a judge acts in bad faith)). When considering an immunity defense, a court should focus on the conduct for which immunity is claimed, not the harm that the conduct allegedly caused or the question of whether it was lawful. *Buckley v. Fitzsimmons,* 509 U.S. 259, 271 (1993). Immunity is immunity from suit, not merely a defense to liability. See, e.g, *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (discussing qualified immunity).

In *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012), after the plaintiff's murder conviction was reversed and he was granted a certificate of innocence, he sued several prosecutors involved in his criminal prosecution. The Seventh Circuit held in *Fields* that a prosecutor is absolutely immune from suit for all actions and decisions in furtherance of his prosecutorial duties and found further that absolute immunity extends beyond an individual prosecutor's decision to indict or try a case. *Fields*, 672 F.3d at 509.

When "determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, [courts] have applied a 'functional approach,' "looking to "the nature of the function performed, not the identity of the actor who performed it." *Smith v. Burge*, 222 F.Supp.3d 669,

694 (N.D. Ill. 2016) (citing *Buckley*, 509 U.S. at 269) When considering a prosecutor's function, a significant factor is whether probable cause to arrest plaintiff existed. *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (Citing *Buckley,* 509 U.S. at 274). Once probable cause exists to arrest plaintiff, a prosecutor can consider herself to be an advocate for the State. *Id.*

Prosecutors are entitled to absolute immunity under Illinois law as well. In evaluating whether a prosecutor is entitled to absolute immunity under Illinois law, Illinois courts have mirrored the United States Supreme Court's pronouncement in *Imbler*. See, e.g., *White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006). Moreover, courts in this District have consistently applied the analysis in *Imbler* to state law claims of malicious prosecution and conspiracy. See, e.g., *Harris v. City of Chicago*, No. 14 C 4391, 2015 WL 1331101, *7 (N.D. Ill. Mar. 19, 2015) (dismissing both federal and state law claims on absolute immunity grounds); *Wrice v. Burge*, 187 F. Supp. 3d 939, 948 (N.D. Ill. 2015) (same).

Here, there was probable cause to charge Plaintiff with a felony offense prior to any plausible involvement of ASA Nazarian. As discussed *supra* Section I subsection C, Plaintiff's own allegation establish that probable cause existed to charge Plaintiff with possession of the murder weapon under 720 ILCS 5/24-1.1 (2000). The murder weapon was located by Defendant Wojcik and Engel in Plaintiff's bedroom prior to ASA Nazarian's involvement. Dkt. 1, ¶ 39. Alternatively, probable cause existed to charge Plaintiff based on Parra's statement. As discussed *supra* Section I subsection A, there is no good faith basis to allege ASA Nazarian was involved in the arrest, questioning, and statement from Parra and Plaintiff has impermissibly group pled these allegations to lump Nazarian in with the other defendants. Furthermore, it is unknown what good faith basis Plaintiff has in bringing allegations regarding Parra's treatment by police that are contrary to Parra's own sworn testimony. Plaintiff's testimony and statement to ASA

12

Rubinstein implicates Plaintiff in the Garcia murder and Parra has not recanted said testimony. As probable cause existed prior to ASA Nazarian's involvement, her role is properly considered as a prosecutor acting as an advocate for the state when taking Plaintiff's court reported statement. *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (Citing *Buckley*, 509 U.S. at 274).

Furthermore, ASA Nazarian's function, i.e. taking a court reporter statement from a criminal suspect is plainly prosecutorial in function. The Supreme Court in *Imbler* recognized that out-of-court effort to control the presentation of a witness's testimony is a task fairly within [a prosecutor's] function as an advocate for the State. *Imbler v Pachtman*, 424 U.S. 409, fn. 32. (1976). Furthermore, Illinois law specifically allows these types of statements to be used in criminal prosecutions as evidence under certain circumstances and carved out a statutory exception to the Rules of Evidence for their use. See generally 725 ILCS 5/115-10.1. Courts in this district have acknowledged the prosecutorial function being undertaking when a prosecutor memorized an individual's statement. See *Kitchen v Burge*, 781 F.Supp. 2d 721, 730 (2011); *Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009). The *Andrews* court stated:

> It is within the proper role of an advocate for the State to take a court reported statement, as well as to see and hear the defendant give the statement, rather than simply take the word of the police that the defendant has confessed. The prosecutor acts within his core functions when he evaluates the evidence gathered by police and, in the case of a confession, takes steps to see that the words of the defendant are properly preserved. A prosecutor should not be deprived of immunity because, in a case of murder, he decides to hear what the defendant has to say for himself.

*Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009). Plaintiff does not allege ASA Nazarian was present for any of the alleged physical or verbal abuse or that she had knowledge thereof. Plaintiff's sworn testimony directly contradicts his allegation that ASA Nazarian was present when he allegedly "rehearsed" his statement with Defendant Wojcik. Ex. D, p. 110, line

13

8-15. Similarly, Plaintiff's sworn testimony contradicts any allegation that Defendant Wojcik made any false promises in front of ASA Nazarian. Ex. D, p. 110, line 8-15. Therefore, there is no plausible claim ASA Nazarian knowingly "manufactured" any false evidence. Moreover, Plaintiff's allegations that ASA Nazarian was acting in an investigatory capacity is a legal conclusion that is not entitled to the presumption of truth. *Allain*, 478 U.S. at 286 (1986); *O'Bannon*, 287 F.3d at 658 (7th Cir. 2002). ASA Nazarian's alleged role was 1) purely prosecutorial in function and 2) engaged in after the establishment of probable cause. Therefore, she is entitled to absolute prosecutorial immunity and ASA Nazarian should be dismissed.

## III.    ALTERNATIVELY, COUNT VIII SHOULD BE DISMISSED BECAUSE PROBABLE CAUSE EXISTED TO CHARGE PLAINTIFF WITH FELONY OFFENSES UNDER ILLINOIS LAW

"To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Sneed v. Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998)(citing *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir.1995)). Probable cause to arrest exists "when the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007).

As discussed *supra* Section I subsection C, Plaintiff's own allegation establish that probable cause existed to charge Plaintiff with possession of the murder weapon under 720 ILCS 5/24-1.1 (2000). Alternatively, probable cause existed to charge Plaintiff based upon Juan Parra's un-recanted statement and testimony implicating Plaintiff in the murder as discussed

*supra* Section I subsection A. Therefore, the Court should dismiss Plaintiff's State Law Claim of

Malicious Prosecution in Count VIII.[7]

## IV. ALTERNATIVELY, COUNT XI SHOULD BE DISMISSED BECAUSE ILLINOIS LAW CONFERS NO SEPARATE CAUSE OF ACTION FOR WILLFUL AND WANTON CONDUCT

Count XI of Plaintiff's Complaint purports to assert a cause of action under Illinois law

for "Willful and Wanton Conduct." Dkt #44, ¶ 238-241. Plaintiff alleges Defendants have a duty

to refrain from willful and wanton conduct and showed an utter indifference to, or conscious

disregard of, Plaintiff's rights. However, under well-settled Illinois law, "there is no separate,

independent tort of willful and wanton conduct." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5*

*Bd. of Directors*, 2012 IL 112479, ¶ 19 (2012); *Krywin v. Chicago Transit Authority*, 238 Ill.2d

215, 235 (2010). "Rather, willful and wanton conduct is regarded as an aggravated form of

negligence." *McLean*, 2012 IL 112479, ¶ 19. Accordingly, to recover for damages based on

willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence

claim in addition to alleging either a deliberate intention to harm or a conscious disregard for the

plaintiff's welfare. *Id.*

There is no recognized standalone claim for willful and wanton conduct or "a duty to

refrain from willful and wanton conduct" under Illinois law. Therefore, Count XI does not state a

claim for which relief can be granted. In *Fletcher v. Bogucki, et al.*, the court dismissed such a

claim on the basis that the allegation that a "duty to refrain from willful and wanton conduct in

connection with the … murder investigation" is insufficient to allege even a negligence claim

aggravated by willful and wanton conduct. No. 20-CV-04768, 2021 WL 4477968, at *8 (N.D.

---

[7] Interestingly, Plaintiff does not bring a claim of Malicious Prosecution and Unlawful Detention under 42 U.S.C. §1983 against ASA Nazarian. However, the existence of probable clause would be fatal to any claim of Malicious Prosecution under 42 U.S.C. §1983. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (Citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir.1997).

Ill. Sept. 30, 2021). Similarly, in this case, Plaintiff's erroneous invocation of a standalone "willful and wanton conduct" claim and failure to allege a duty recognized under Illinois law is fatal to his claim in Count XI and requires dismissal. *Id*.

## V.   COOK COUNTY IS NOT LIABLE UNDER ANY DERIVATE THEORY OF LIABILITY BECAUSE ASA NAZARIAN IS NOT LIABLE

Plaintiff alleges no causes of action against Cook County. The only allegation directed towards Cook County identifies it as ASA Nazarian's employer and alleges that Cook County is a necessary party. Dkt. #1, ¶ 24. Section 2-109 of the Tort Immunity Act provides that a "local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Therefore, in the event the Court grants judgment in favor of ASA Nazarian, Cook County is also entitled to judgment.

## CONCLUSION

WHEREFORE, Defendants, former Assistant State's Attorney NANCY NAZARIAN, and COOK COUNTY respectfully request this Court dismiss Plaintiff's Complaint against them and any other relief this Court deems just and fair.

In the alternative, Defendant Cook County respectfully requests that an order be entered that states: 1) there is no basis for liability on the part of the County articulated in Plaintiff's Complaint; 2) the County remains in this case solely for the purpose of indemnification; 3) the County is excused from any discovery obligations, and 4) for such other and further relief as the Court deems necessary and appropriate.

s/ William B. Oberts                                    s/ Kelli Huntsman
Special State's Attorney for                        Assistant State's Attorney for Defendant
defendant, Nancy Nazarian                        Cook County

William B. Oberts - #6244723                    Kelli Huntsman
Kevin C. Kirk -  # 6329937                         Assistant State's Attorney
Tribler Orpett & Meyer, P.C.                       500 Richard J. Daley Center

225 W. Washington St., Suite 2550
Chicago, IL 60606
(312) 201-6400
wboberts@tribler.com
kckirk@tribler.com

Chicago, IL 60602
Kelli.huntsman@cookcountysao.org
(312) 603-7379

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendants Nancy Nazarian and Cook County's Memorandum of Law in Support of Dismissal was served upon:

| | |
|---|---|
| **Attorneys for Plaintiff** | **Attorneys for City of Chicago** |
| Ashley B. Cohen | Eileen E. Rosen |
| Gabriella A. Orozco | Andrew J. Grill |
| Jennifer A Bonjean | Austin G. Rahe |
| Bonjean Law Group | Catherine M. Barber |
| 750 Lexington Avenue 9th Floor | Erica Fatima |
| New York, NY 10022 | Jessica Zehner |
| 718-875-1850 | Lauren M. Ferrise |
| Ashley@bonjeanlaw.com | Theresa B. Carney |
| gabriella@bonjeanlaw.com | Rock, Fusco & Connelly |
| jennifer@bonjeanlaw.com | 333 West Wacker Drive Ste 19th Floor |
| | Chicago, IL 60606 |
| **Attorneys for Reynaldo Guevara** | 312-494-1000 |
| Emily Erin Schnidt | erosen@rfclaw.com |
| Graham P. Miller | agrill@rfclaw.com |
| Kathryn E Boyle | arahe@rfclaw.com |
| Misha Itchhaporia | cbarber@rfclaw.com |
| Molly Boekeloo | efatima@rfclaw.com |
| Steven B. Borkan | jzehner@rfclaw.com |
| Timothy P. Scahill | lferrise@rfclaw.com |
| Whitney N. Hutchinson | tcarney@rfclaw.com |
| Borkan & Scahill, Ltd. | |
| 20 S. Clark Street Suite 1700 | **Attorneys for Anthony Wojcik, Daniel Engel,** |
| Chicago, IL 60603 | **Jerome Bogucki, Ray Schalk** |
| (312) 580-1030 | James G. Sotos |
| eschnidt@borkanscahill.com | Elizabeth R. Fleming |
| gmiller@borkanscahill.com | Joseph M. Polick |
| kboyle@borkanscahill.com | Josh M. Enquist |
| mitchhaporia@borkanscahill.com | Maurice Hunt |
| mboekeloo@borkanscahill.com | Thomas Sotos |
| sborkan@borkanscahill.com | The Sotos Law Firm, P.C. |
| tscahill@borkanscahill.com | 141 W. Jackson Blvd. #1240A |
| whutchinson@borkanscahill.com | Chicago, IL 60604 |
| | (630) 735-3300 |
| **Attorneys for Cook County** | jsotos@jsotoslaw.com |
| Kelli Huntsman | efleming@jsotoslaw.com |
| Cook County State's Attorney's Office | jpolick@jsotoslaw.com |
| 500 Richard J. Daley | Jenquist@jsotoslaw.com |
| Chicago, IL 60602 | mhunt@jsotoslaw.com |
| (312) 603-7379 | tsotos@jsotoslaw.com |
| kelli.huntsman@cookcountyil.gov | |

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on January 29, 2024, with proper postage prepaid.

s/ William B. Oberts
an Attorney

1