**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JEREMIAH CAIN,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-CV14282 |
| | ) | |
| v. | ) | |
| | ) | Honorable Martha M. Pacold |
| **REYNALDO GUEVARA, ANTHONY** | ) | |
| **WOJCIK, GERI LYNN YANOW, as** | ) | |
| **SPECIAL REPRESENTATIVE FOR** | ) | |
| **ERNEST HALVORSEN, DANIEL ENGEL** | ) | |
| **JEROME BOGUCKI, RAY SCHALK,** | ) | |
| **NANCY NAZARIAN, the CITY OF CHICAGO,** | ) | |
| **and COOK COUNTY,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS NANCY
NAZARIAN AND COOK COUNTY'S MOTION TO DISMISS**

1

Defendant Assistant State's Attorney Nancy Nazarian (hereinafter "Defendant Nazarian") and Cook County move to dismiss all claims alleged against them in Plaintiff's First Amended Complaint ("FAC"). Dkt. 58. Defendant Nazarian's motion turns entirely on this Court crediting *her* version of the facts (which were discarded long ago when Plaintiff was exonerated in state court) rather than crediting the allegations contained in Plaintiff's FAC as required by well-established law. As set out in detail below: (1) this Court is prohibited from looking outside the four corners of the FAC to resolve factual disputes raised in Defendants' motion; (2) absolute prosecutorial immunity does not shield Defendant Nazarian from liability; and (3) Defendant's arguments regarding Plaintiff's state law claims of malicious prosecution, and willful and wanton conduct are moot.

## ALLEGATIONS IN THE COMPLAINT AGAINST NANCY NAZARIAN
### The Murder and Initial Investigation

Plaintiff was arrested, charged, and convicted of crimes arising from a shooting that killed a man named Jose Garcia and injured an individual named Julio Lugo. *See* generally FAC. On March 22, 1999, Julio Lugo and his cousins Fred Marrero and Ysidro Quinones were headed to the store to pick up groceries for Lugo's aunt. *Id.* at ¶ 26. On the way to the store Lugo observed a gold Chevy Caprice with four or five people in it throwing gang signs at them; one guy threw a bottle at their car. *Id.* at ¶ 27. Lugo and his cousins continued to the grocery store at Belmont and Monticello. *Id*. After arriving at the intersection, Lugo jumped out of the car and recognized friends Jose Garcia and Ramon Torres driving, and they all stopped to talk. *Id.* at ¶ 28.

Garcia and Ramon Torres were sitting in their parked car talking to Lugo and Quinones when they observed someone standing about 10 to 15 feet away on Monticello. *Id.* at ¶ 28-29. The individual flashed gang signs and shouted "OA" gang slogans before throwing on his hoody,

2

retrieving a gun from his pouch, and shooting at Torres' car. *Id.* at ¶ 29. Garcia was shot in the head and died and Lugo was shot twice. *Id.* at ¶ 30.

The Defendant officers assigned to the case began searching for the owner of a Chevy Caprice and seized on 19-year-old Juan Parra, who was a member of the OA street gang. *Id.* at ¶ 33. The Defendants prepared a photo array that included a photo of Parra and displayed it to Torres and Lugo. *Id.* Neither of them identified Parra. *Id.* Despite having no evidence to connect Parra to the shooting, the officers arrested Parra and took brought him to Area Five. *Id.* at ¶ 34.

### The Coercive Interrogations and Fabricated Statements

Defendant Officers interrogated Parra, held him overnight, and falsely told him they had evidence that he committed the crime. *Id.* at ¶ 35. Defendants promised Parra that if he adopted a false narrative fed to him, he would only be a witness and would not be charged with the crime. *Id.* Parra repeatedly denied his role in the murder but the officers continued to interrogate him, eventually overcoming his will and forcing him to repeat the false confession. *Id.*

The false narrative alleged that Parra, "Cain" (Plaintiff), "PeeWee" (Nicasio Santiago), and "Sef" (Eruby Abrego) drove to Latin King territory and initiated a confrontation with Latin Kings. *Id.* at ¶ 36. PeeWee and Cain then returned to Parra's car but Sef did not. *Id.* Parra pulled into an alley and waited. *Id.* He heard several shots and saw Sef running back to the car holding a gun. *Id.*

### Plaintiff is Tortured Into Giving a False Confession

After having obtained the false statement from Parra, Defendant Officers Schalk, Bogucki and Wojcik arrested Plaintiff in his home on March 24, 1999. *Id.* at ¶ 38. Outside the presence of Plaintiff, Defendants Wojcik and Engel recovered a .357 magnum from Plaintiff's bedroom that was allegedly the gun used in the shooting. *Id.* at ¶ 39. Two days before the arrest,

a young member of the OA street gang came to his apartment and told Plaintiff that "PeeWee" (Nicasio Santiago), a fellow gang member, wanted him to hold onto his gun. *Id.* at ¶ 40. Plaintiff agreed to hold on to the gun, having no knowledge it was involved in any crime. *Id.*

Defendant Wojcik interrogated Plaintiff at Area Five for approximately 13 hours. *Id.* at ¶ 41. Defendant Wojcik told Plaintiff they already knew Plaintiff was involved in Garcia's murder because Parra told them everything, but Plaintiff repeatedly denied his involvement. *Id. at* ¶ 41-42. Over the course of 13 hours, Defendant Wojcik raised his voice and used profanities, eventually telling Plaintiff that if he did not regurgitate Parra's version of events, he would be charged as the shooter. *Id.* at ¶ 42. When Plaintiff refused to adopt the story, Wojcik began to physically assault Plaintiff. *Id.* at ¶ 42. Wojcik slapped Plaintiff in the face, and punched him in the stomach and the chest with such force that Plaintiff thought he would vomit. *Id.*

Defendant Wojcik left the room and returned with a new strategy: that Plaintiff would only be charged with a gun case if he repeated the fabricated narrative. *Id.* at 44. Plaintiff agreed to cooperate out of fear of continued beating and being charged with a murder he did not commit. *Id.* at ¶ 45.

Plaintiff rehearsed the false story with Defendant Wojcik in the presence of Defendant Nazarian who was present when Defendant Wojcik coached Plaintiff on exactly what to say before a court reporter. *Id.* at ¶ 46. After Plaintiff made the court reported statement, Defendant Wojcik added and embellished the false story in the presence of Defendant Nazarian. *Id.* at ¶ 47. Defendant Nazarian and Wojcik together strengthened Plaintiff's false statement to make Plaintiff guilty of murder under an accountability theory, knowing the statements were not true. *Id.* Defendant Nazarian was present when Defendant Wojcik reassured Plaintiff that he was only

being charged with a gun case and would be used as witness. *Id.* at ¶ 48. Defendant Nazarian did

not tell Plaintiff that he was actually being charged with murder. *Id.*

The Defendant officers arrested Eruby Abrego and Nicasio Santiago the same day as

Plaintiff. *Id.* at 50. Abrego was interrogated for 48 hours, physically abused by Wojcik and was

likewise forced to repeat the fabricated story that was fed to him by the Defendants. *Id.* at 51-52.

In addition, the Defendant officers manufactured a false identification of Abrego using

suggestive identification procedures. *Id.* at 53-59.

### Innocence

Plaintiff is innocent of the Garcia murder and spent 23 years incarcerated for the crime.

*Id.* at ¶¶ 1, 60, 67. The State's case hinged on the false, fabricated and physically coerced

statement of Plaintiff. *Id.* at ¶ 62. Nicasio Santiago has admitted he carried out the shooting and

that he did not get the gun from Plaintiff. *Id.* at ¶ 68. Santiago further admitted that Cain had no

knowledge or involvement in the shooting. *Id.* Further, the identification witnesses admitted that

Defendants Guevara and Halvorsen manipulated their testimony and that they falsely identified

Abrego as the shooter. *Id.* at ¶ 69.

### ARGUMENT

**I.      DEFENDANT NAZARIAN IS PROHIBITED FROM RELYING ON MATERIALS OUTSIDE THE FOUR CORNERS OF THE COMPLAINT TO CHALLENGE THE TRUTH OF PLAINTIFF'S ALLEGATIONS.**

Defendant Nazarian fails to appreciate basic principles of law that guide this Court's

analysis on motions to dismiss. After setting forth the applicable law for examining a motion to

dismiss, Defendant Nazarian promptly ignores it, asking this Court to do what it cannot, namely

ignore Plaintiff's FAC and credit her (already debunked) alternative version of the facts.

Ironically, Defendant Nazarian asks this Court to credit the fabricated evidence she helped create.

Inappropriately, Defendant Nazarian attaches documents (*e.g.,* a 1999 court-reported statement of Juan Parra and Juan Parra's 2001 trial testimony) to her motion to dismiss and then asks this Court to assume the truth of the contents of those materials - even after they were discredited at a post-conviction hearing. In particular, Defendant Nazarian argues that Plaintiff's allegations regarding Parra's statement and ASA Nazarian's role in taking Plaintiff's statement are not well-pled where they are contrary to other outside evidence and therefore should not be given the presumption of truth. This Court has no authority to assume the truth of Defendant Nazarian's alternative set of facts that are based on materials outside the FAC. Defendant Nazarian will have every opportunity to challenge the merits of Plaintiff's claim but she will have to wait to do so. After all, "the purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, and not its merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990); Def. Motion at p.2.

Defendant Nazarian's argument for dismissal must be based on the allegations in Plaintiff's FAC, construed in Plaintiff's favor, and not on Defendant Nazarian's alternative version of events. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 12(b)(6) cannot be used to assess the merits of a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). The Supreme Court very recently reiterated that at the motion-to-dismiss stage of the case a plaintiff need not "definitively prove" his claims. *Tyler v. Hennepin County*, No. 22-166, 2023 WL 3632754, slip op. at 4 (U.S. May 25, 2023). It is not a Court's role at this stage to determine whether Plaintiff's account will ultimately hold up: "'Plausibility' . . . does not imply that the district court should decide whose version to believe, or which version is more

likely than not," the Seventh Circuit has cautioned, "the [Supreme] Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together … the court will ask itself could these things have happened, not did they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

Relatedly, a Court may not rely on materials outside of the FAC at this stage of the case to resolve a factual dispute and dismiss a pleading. This Court is limited to the FAC when evaluating a motion to dismiss under Rule 12(b)(6), and if a motion depends on materials outside of the pleadings, then it must be converted to one for summary judgment under Rule 56. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Federal Rule of Evidence 201 establishes a narrow exception for courts to take notice of matters of public record, but that exception cannot swallow the rule, and so judicial notice is allowed only where a fact "is not subject to reasonable dispute," Fed. R. Evid. 201(b); *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). As a result, a court may take notice of the fact that a judicial proceeding occurred, but it may not take notice of disputed facts in the records of that proceeding. *General Elec. Capital v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed."); *Global Relief v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *4 (N.D. Ill. Sept. 11, 2002) ("Typically, [judicial] notice of a court order is limited to the purpose of recognizing the judicial act or litigation, but not for the truth of the matters asserted in the document."). If facts from outside of a complaint are subject to dispute, those facts cannot be used to contradict a complaint or to decide a motion under Rule 12(b)(6). *General Electric Capital*, 128 F.3d at 1076-83; *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 771-72 (N.D. Ill. 2011). Indeed, the

Seventh Circuit has reversed dismissals under Rule 12(b)(6) where contradictory facts from outside of the complaint were considered. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 (7th Cir. 2000).

Defendant Nazarian points to materials outside of the FAC for the prohibited purpose--to mount factual challenges to the FAC. First, she asks this Court to impermissibly credit the *truth* of Parra's 1999 statement and 2001 trial testimony even though Plaintiff has alleged in his FAC that Parra's handwritten statement was coerced, false, and fabricated. Separately, Defendant Nazarian alleges that Plaintiff's FAC is not well-pled because it is contradicted by Plaintiff's testimony at his post-conviction hearing. Again, this Court is not at liberty to simply reject the allegations contained in Plaintiff's FAC because Defendant Nazarian believes (wrongly) that inconsistencies exist between the FAC and Plaintiff's post-conviction testimony.

Even if this Court ignored these rules, there is nothing in the materials that Defendant Nazarian provides that actually contradicts the allegations in Plaintiff's FAC. For one, Defendant Nazarian overlooks that Plaintiff was exonerated after lengthy and exhaustive state court post-conviction proceedings where the *State* agreed to relief and moved to dismiss all charges against Plaintiff (and his co-plaintiff Abrego). The State did present Parra's testimony during those post-conviction proceedings or at a retrial. No evidence exists to suggest that Parra's statements were true. Indeed, Defendant Nazarian has no idea whether Parra has already retracted his 25-year old statement and whether he alleges that it was coerced at the hands of notorious corrupt police officers. Defendant Nazarian is free explore this question during discovery but for now the question remains whether Plaintiff's FAC is well-pled - not whether it is true.

Second, Defendant argues that Plaintiff's allegations regarding ASA Nazarian's role in taking Plaintiff's statement "contradict" Plaintiff's own sworn testimony. Not only is it wildly

inappropriate to characterize Plaintiff's limited post-conviction hearing testimony as "contradictory" to his FAC, it also happens to be untrue. Plaintiff's post-conviction testimony was limited and did not detail his 72-hour interrogation at Area Five. Critically, his testimony was not focused on Defendant Nazarian's specific conduct and role in his wrongful conviction. That said, Plaintiff's testimony concerning Defendant Nazarian's conduct is *consistent* with the claims raised in his FAC. In particular, Plaintiff alleges that Defendant Nazarian was present when Defendant Wojcik coached Plaintiff on what to say, that she was present to embellish the story and assisted in strengthening the statement. FAC ¶ 46-48. Plaintiff expressly stated in his post-conviction testimony that with Defendant Nazarian present:

> we kind of went over [the statement] line for line, and then Detective Wojcik would stop at certain lines and then add a little extra to. it and then ask if I would agree to it. And he would say, like, well, you know, it happened like this or this right? And then he'd look at me. And I'm more concerned about going back in the interrogation room, so I am like, yes, sir.

Def. Ex. D, p. 146, line 11 - p. 147, line 6.

This testimony does not contradict Plaintiff's allegations that Defendant Nazarian was aware that the statement was false--it shows that she was present when Defendant Wojcik was making his own personal and false changes to Plaintiff's statement. That Plaintiff did not tell Defendant Nazarian that he was threatened by Defendant Wojcik merely means that he did not have to tell her because she already knew, having participated in the improper conduct.

## II. AS THE FAC ALLEGES, PROBABLE CAUSE DID NOT EXIST TO JUSTIFY CHARGING PLAINTIFF WITH MURDER OR ANY CRIMES STEMMING FROM THE SHOOTING.

Defendant Nazarian concedes, as she must, that Plaintiff's FAC adequately pleads that probable cause did not exist to justify charging Plaintiff with murder but she insists that Defendants had probable cause to charge Plaintiff with gun possession because a gun was recovered from Plaintiff's apartment at the time of the arrest and he was a convicted felon.

Nazarian's argument might be relevant to challenge a false arrest charge but it has no bearing on Plaintiff's Fourth Amendment claims which are premised on a lack of probable to charge him with *murder* not for possession of a firearm (for which he was acquitted in any event). It is well established that "probable cause to believe an individual committed one crime--and even his conviction of that crime--does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007). More specifically: "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which *probable cause was lacking*." *Id.*

As pled, no probable cause existed to justify charging Plaintiff with murder where the evidence developed against Plaintiff was fabricated and the Defendants knew it. That there may have been probable cause to arrest or even charge Plaintiff with a gun charge is irrelevant to the question of whether probable cause existed to justify charges related to the murder of Jose Garcia.

### III.   PLAINTIFF'S ALLEGATIONS ARE SPECIFIC ENOUGHT TO PUT DEFENDANT NAZARIAN ON NOTICE OF HER CONDUCT

Defendant Nazarian argues that Plaintiff impermissibly "group pleads" his allegations regarding the arrest, questioning, and statement of Juan Parra. This argument is premature and lacks merit where group pleading is permissible at this stage of the case.

Rule 8(a) of the Federal Rules of Civil Procedure in relevant part requires a short plain statement of the claim showing that the pleader is entitled to relief. FRCP 8(a)(2). This district has held that Rule 8(a) is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf*, 2014 U.S. Dist. LEXIS 136341, at *11 (N.D. Ill. Sept. 24,

2013). Rather, sometimes "an allegation directed at multiple defendants can be adequate to plead personal involvement." *Riviera v. Lake City*, 974 F. Supp.2d 1179, 1194 (N.D. Ill. 2013). Notice of the claims against the defendants is all that is required at this stage of the proceedings under FRCP 8(a). *See Sopron v. Cassidy*, 2022 U.S. Dist. LEXIS 61114, at \*18 (N.D. Ill. 2022).

Plaintiff has plead with great specificity that Defendant Nazarian was involved in the unconstitutional interrogation of Plaintiff, that she participated in the fabrication of evidence that was introduced at Plaintiff's trial (*e.g.* Plaintiff's false statement), and that she instituted murder charges against Plaintiff absent probable cause. *See* FAC ¶¶ 4, 23, 46-49, 134-136. Plaintiff is on notice that these are the claims against her.[1] At this stage, Plaintiff's allegations are enough.

### III.   PLAINTIFF'S CLAIM AGAINST DEFENDANT NAZARIAN IS NOT BARRED BY PROSECUTORIAL IMMUNITY

Absolute immunity is only available for conduct done in furtherance of a prosecutor's duties to act as an advocate of the state. It is not available for conduct done in an investigatory capacity where, like here, the prosecutor was acting more like a police officer. *Hughes v. Krause*, 2008 WL 904898, at \*3 (N.D. Ill. Mar. 31, 2008). Defendant Nazarian's claim of immunity is unsupported by the law and her argument is premised on an utter misunderstanding of Plaintiff's claims. Defendant Nazarian's absolute immunity argument must be rejected.

A prosecutor "seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotations and citations omitted). The Supreme Court has "been 'quite sparing' in recognizing absolute immunity for state actors" in the Section 1983 context. *Id.* (quoting

---

[1]      To the extent that Plaintiff did not specifically name Defendant Nazarian in Counts I, IV, and V of his FAC, Plaintiff clarifies that based on the facts alleged, he fully intended to include Defendant Nazarian as one of the Defendants referenced in Counts I, IV and V at pages 37; 41-42 of Plaintiff's FAC. The facts alleged in the FAC demonstrate that Defendant Nazarian violated Plaintiff's constitutional rights as set out in Counts I, III, IV, and V of the FAC.

*Forrester v. White*, 484 U.S. 219, 224 (1988)). In short, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Id.* at 273. Instead, prosecutors enjoy immunity only for actions "undertaken in furtherance of [their] prosecutorial duties," and whether an action qualifies as "prosecutorial" is a functional test, not a formal one. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012); *Buckley*, 509 U.S. at 277. Prosecutorial actions, those that are "intimately associated with the judicial phase of the criminal process," are immunized, but investigative actions, even if performed by a prosecutor, are not. *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (internal quotation marks and citations omitted); *Buckley*, 509 U.S. at 270.

The allegations contained in the FAC establish that Defendant Nazarian had not yet put on her prosecutorial hat when she helped coerce a fabricated and false confession from Plaintiff absent probable cause that was later used to convict him. Plaintiff's FAC alleges that Defendant Nazarian conspired with the Defendant Officers to frame Plaintiff for murder while serving in an investigatory capacity. FAC ¶24 Specifically alleged facts support the plausible assertion. The Defendant Officers quickly decided members of the Orchestra Albany street gang carried out the shooting and narrowed their investigation to confirm this theory. *Id.* at ¶33. Once deciding on Parra as a suspect, they arrested him without probable cause and coerced him into giving a false and fabricated statement that placed Plaintiff near the vicinity of the shooting but in no way established his involvement in the crime. *Id.* at ¶34-35. The Defendant Officers used Parra's false and fabricated statement to arrest and interrogate Plaintiff who maintained his innocence but who was eventually coerced into adopting a false narrative fed to him by the Defendants, including Defendant Nazarian. *Id.* at ¶¶38-45.

12

As to Defendant Nazarian specifically, Plaintiff alleges in the FAC that Nazarian, acting in an investigatory capacity, knew Plaintiff's confession was false and coerced by Defendant Wojcik, and assisted in "improving" the false, fabricated confession, and falsely reassured Plaintiff that he would only be charged with a gun case - knowing that promise was a lie. *Id.* at ¶4 Plaintiff further alleged that Defendant Nazarian participated in the interrogation and helped shape the false narrative knowing it to be false. *Id.* at ¶¶46-48 Nazarian was present while Wojcik rehearsed the statement with Plaintiff and while Defendant Wojcik coached Plaintiff for the court-reported statement. Defendant Nazarian assisted in fabricating the statement to ensure Plaintiff's guilt under an accountability theory, knowing the statements were not true. Defendant Nazarian reassured Plaintiff that he was only be charged with a gun case when, in fact, she knew she was approving murder charges against him. *Id.*

These facts, taken as true, demonstrate that Nazarian's conduct did not fall within the scope of prosecutorial actions. Contrary to Defendant Nazarian's claim, she did not merely show up to take Plaintiff's confession. Defendant Nazarian helped shape the confession, embellished and improved on it, and deceived Plaintiff by falsely assuring him that he would only be charged with a gun case. In contrast to *Andrews v. Burge*, 660 F. Supp. 2d 868, 878 (N.D. Ill. 2009), Defendant Nazarian did not merely evaluate the evidence and ensure that the words of the defendant were properly preserved, she assisted Defendant Wojcik in fabricating the confession and tricking Plaintiff into adopting it. Accordingly, Nazarian is not entitled to qualified immunity. *See, e.g., Orange v. Burge,* 2008 WL 4443280 at *11 (N.D. Ill. Sept. 29, 2008) (finding that the ASA was present in and around the interrogation rooms at Area 2 and "whether [the ASA] heard audible shouts or screams, or otherwise had constructive knowledge of the alleged torture . . . are questions for the fact finder."); *Wilson v. Est. of Burge,* 2023 WL 2750946

13

at *22 (N.D. Ill. Mar. 31, 2023) (finding the defendant prosecutor was present at Area 2 during the torture and participated in the coercion and fabrication of the statement was not entitled to absolute immunity); *Serrano v. Guevara,* 315 F. Supp. 3d 1026 (N.D. Ill. 2018) (denying prosecutorial immunity where prosecutor absent probable cause helped a detective coerce a witness into implicating the defendant); *Fogle v. Sokol,* 957 F. 3d 148 (3d Cir. 2020) (denying prosecutorial immunity where prosecutor "jumped in" to the investigation of a case, and used the same improper tactics police officers used previously to coerce a confession from the ; *Watkins v. Healy,* 986 F. 3d 648 (6th Cir. 2021) (finding that prosecutor was not entitled to immunity where his actions interrogation and threatening a witness were "divorced" from the judicial phase).

Lastly, probable cause to arrest Plaintiff for the murder of Jose Garcia did not exist at the time Defendant Nazarian helped coerced a false and fabricated statement from Plaintiff. Defendant Nazarian's argument that probable cause existed by virtue of Plaintiff possessing a weapon as a felon is specious. As stated above, probable cause can exist for one crime and not another. *See Holmes*, 511 F.3d at 682. The mere fact that a weapon was recovered from Plaintiff's apartment does not provide probable cause to believe Plaintiff committed a shooting that killed one person and injured another.

To the extent that Defendant Nazarian claims that Juan Parra's statement provided probable cause to believe Plaintiff was accountable for the murder, the argument fails for two reasons. First, Plaintiff has alleged that Parra's statements were fabricated. As such, they cannot create probable cause. *See Kuri v. City of Chicago,* 2017 WL 4882338 at *7 (N.D. Ill. Oct. 30, 2017) (holding that probable cause cannot be based on manufactured evidence)

Second, even taking Parra's statement as true, it does not establish probable cause to believe that Plaintiff had any knowledge or role in the shooting. As pled in the FAC, Parra gave a

14

statement indicating that he had other members of his gang, including Plaintiff, drove into Latin King territory and got into a confrontation with Latin Kings. According to the statement, he and Plaintiff went back to Parra's car, but "Sef" did not. Parra and Plaintiff heard several shots and saw "Sef" running back to the car holding the gun. FAC, ¶36. Plaintiff alleges that Parra's statement was fabricated but even if it was true, it did not provide the probable cause necessary to establish that Plaintiff was involved in the shooting. Nothing about the statement suggested that Plaintiff knew anything about a shooting either before or after the shooting. Parra did not allege that Plaintiff helped plan the shooting, was involved the shooting, was in possession of the gun, or ever touched the gun. Thus, Parra's statement as summarized in ¶36 of the FAC could not have provided probable cause to establish Plaintiff's involvement in the shooting - even if it was true. In short, the only evidence that provided probable cause to charge Plaintiff with murder and attempted murder was Plaintiff's coerced and fabricated confession secured by Defendants, including Defendant Nazarian.

Fabricated evidence is "[evidence] that is made up; it is invariably false. False [evidence] is the equivalent; it is [evidence] known to be untrue by the witness and by whoever cajoled or coerced the witness to give it." *Wharrie,* 740 F. 3d at 1110. It is clear that "[d]efendants cannot manufacture their own probable cause by fabricating evidence and manipulating witnesses." *Kuri,* 2017 WL 4882338 at *7. As pled, Defendant Nazarian had no facts in her possession establishing probable cause to believe Plaintiff was involved in the murder at the time she helped Defendant Wojcik coerce a false statement from Plaintiff. Nazarian's investigatory actions are not protected by absolute immunity. Simply put, it defeats absolute immunity for a prosecutor to participate in the fabrication of a false statement, as Defendant Nazarian did here. *Lewis v. Mills,* 677 F. 3d 324, 331 (7th Cir. 2012 ("[A] showing that a prosecutor investigated and fabricated

evidence against a target would automatically defense absolute prosecutorial immunity.") The allegations against Defendant Nazarian show that she had knowledge and involvement in the coercion of Plaintiff's confession; she assisted in the fabrication of the statement; and used that false and fabricated statement to initiate charges against Plaintiff without probable cause. Accordingly, Defendant Nazarian's motion to dismiss on absolute immunity grounds must be denied.

### IV. DEFENDANT NAZARIAN'S ARGUMENT IS MOOT WHERE PLAINTIFF DISMISSED HIS STATE LAW CLAIM OF MALICIOUS PROSECUTION

Plaintiff filed his amended complaint on February 7, 2024 [Dkt. 58], after Defendants' filed the instant motion. In his amended complaint, Defendant removed all state law claims against all parties. Therefore, this argument is moot.

### V. DEFENDANT NAZARIAN'S ARGUMENT IS MOOT WHERE PLAINTIFF DISMISSED HIS STATE LAW CLAIM OF WILLFUL AND WANTON CONDUCT

Plaintiff filed his amended complaint on February 7, 2024 [Dkt. 58], after Defendants' filed the instant motion. In his amended complaint, Defendant removed all state law claims against all parties. Therefore, this argument is moot.

### VI. COOK COUNTY IS LIABLE BECAUSE DEFENDANT NAZARIAN IS LIABLE

Plaintiff agrees with Defendant Cook County that Plaintiff does not plead any causes of action against Cook County for any of its own conduct. Plaintiff agrees that if Defendant Nazarian is not liable, neither is Cook County. Until then, Defendant Cook County is a necessary party and this court should deny Cook County's request for dismissal.

Respectfully Submitted,
/s/ JENNIFER BONJEAN

*One of the attorneys for Plaintiff*
BONJEAN LAW GROUP
750 Lexington Avenue, 9th Fl.
New York, NY 10022
Tel: 718.875.1850
Fax: 914.462.3483
Email: jennifer@bonjeanlaw.com

**<u>Chicago Office:</u>**
Bonjean Law Group, PLLC
53 W. Jackson Blvd., Ste. 315
Chicago, Illinois 60604